UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYNADA JONES #321198,

      Petitioner,                                Hon. Janet T. Neff

v.                                                          Case No. 1:14-CV-673

DeWAYNE BURTON,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Jones' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Jones' petition be **denied**.

## BACKGROUND

As a result of events occurring on April 8, 2010, Petitioner was charged with: (1) homicide, open murder; (2) first degree home invasion; and (3) carrying a concealed weapon. (ECF No. 24-6 at PageID.272-73). Following a jury trial, Petitioner was convicted of: (1) first degree felony murder; (2) first degree home invasion; and (3) carrying a concealed weapon. (ECF No. 24-11 at PageID.456). Petitioner was sentenced to serve life in prison without possibility of parole on the felony murder conviction and lesser concurrent terms of imprisonment on the other convictions.

(ECF No. 24-12 at PageID.478). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claim:

> I. The trial judge reversibly erred in sustaining a prosecution objection to testimony from Megan Collins' mother as to Ms. Collins' behavior and demeanor when she was not taking her medication for depression, as that inquiry was relevant to the defense theory that Ms. Collins' actions on the night of the offense provoked Mr. Jones and mitigated the homicide offense to voluntary manslaughter.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Jones*, 2012 WL 6913823 (Mich. Ct. App., Nov. 20, 2012). Asserting the above issue, as well as several new issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Jones*, Case No. 146416, Order (Mich., Apr. 1, 2013). On June 23, 2014, Petitioner initiated the present action, asserting the claim identified above as well as several additional claims. (ECF No. 1). Petitioner subsequently amended his petition. (ECF No. 11).

On October 1, 2014, the Honorable Janet T. Neff issued an Opinion finding that, with the exception of the claim identified above, Petitioner had failed to properly exhaust the claims in his petition for habeas relief. (ECF No. 14). The Court further determined, however, that Petitioner was entitled to a stay of this matter so that he could return to state court to pursue his unexhausted claims. (ECF No. 14). On January 20, 2015, however, Petitioner informed the Court that he had "voluntarily abandoned" his unexhausted claims and desired that the Court "proceed forward" to review his exhausted claim. (ECF No. 19). The Court granted Petitioner's request. (ECF No. 20). Thus, the only claim presented in this matter is the claim identified above.

**STANDARD OF REVIEW**

Jones' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

4

unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard. The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir.

2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

Petitioner was charged in the killing of Megan Collins. Linda Collins, the victim's mother, testified at Petitioner's trial. Petitioner's cross-examination of Collins proceeded as follows:

| | |
|---|---|
| Mr. Toman: | Ms. Collins, it's not my intent to keep you up here very long. You said you went there to your daughter's apartment, to apartment A207, to help her out because you knew there was problems between she and Ray? |
| Ms. Collins: | Correct. |
| Mr. Toman: | Not the first time that there had been conflict between she and Ray? |
| Ms. Collins: | No, that's true. |
| Mr. Toman: | In fact, there has been a history of it? |
| Ms. Collins: | I am the mother so I knew just a few. If there is more - |
| Mr. Toman: | All right. In addition to problems with Ray, isn't it true that Megan had some mental issues? |
| Ms. Collins: | She had depression, yes. |
| Mr. Toman: | And she was taking medication for that, true? |
| Ms. Collins: | Yes. |
| Mr. Toman: | Could you tell a difference between when she was on her medication and when she was off? |
| Ms. Collins: | Yes. |
| Mr. Toman: | How would you make the distinction? How was she when she was not on her medication? |

> Mr. O'Keefe: Your Honor, I am going to object to this line of questioning. I don't see how the victim's medication is relevant here.
>
> The Court: How is this relevant?
>
> Mr. Toman: It's relevant for the following reason, Your Honor. There is a story about this conflict. I want to know more about this conflict and whether or not - one of the theories from the Prosecution is that there is this premeditation. And what I want to know is whether or not her mental status may have affected how she was on April 8th, and what kinds of reactions or provocations she may have presented to Mr. Jones.
>
> Mr. O'Keefe: Your Honor, someone broke into Ms. Collins' apartment in the middle of the night and murdered her in her apartment, and I don't think there is any issue as to whether or not she was murdered. I don't see how her mental state could possibly be relevant in terms of proving who actually killed her.
>
> The Court: How is her mental state probative to that?
>
> Mr. Toman: It may show motivation.
>
> The Court: For what? Asking to be murdered?
>
> Mr. Toman: It may lessen the degree of murder. It may have been no - there may have been provocation.
>
> Mr. O'Keefe: Your Honor -
>
> The Court: Wait just one minute. There were no witnesses, correct?
>
> Mr. Toman: That's correct.
>
> The Court: Then I am not going to allow it.
>
> Mr. Toman: Then I have no further questions. Thank you.

(ECF No. 24-6 at PageID.306).

Petitioner asserts that the trial court's ruling, preventing him from asking Linda Collins about her daughter's depression and her conduct and/or demeanor when she did not take her

anti-depression medication, deprived him of the right to present a defense.

The United States Constitution guarantees to criminal defendants "a meaningful opportunity to present a complete defense." *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This right is not without limits, however, and may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also*, *Taylor v. Illinois*, 484 U.S. 400, 412-13 (1988) ("[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system"); *Couturier v. Vasbinder*, 385 Fed. Appx. 509, 516 (6th Cir., July 13, 2010) ("the right to present a complete defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions") (citation omitted). As the Supreme Court has recognized, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006); *see also*, *Geisen*, 612 F.3d at 495.

Accordingly, criminal defendants "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). The application of such rules does not abridge an accused's right to present a defense so long as they are not "arbitrary or disproportionate to the purposes they are designed to serve." *Renico*, 606 F.3d at 870 (quoting *Scheffer*, 523 U.S. at 308). As is well recognized, trial judges must make many evidentiary rulings during the course of a trial and "the Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence

that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Crane*, 476 U.S. at 689-90.

An evidentiary ruling violates a defendant's right to present a defense only where "the exclusion of evidence seriously undermined fundamental elements of the defendant's defense against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315-17). Accordingly, whether the exclusion of the evidence in question violated the defendant's right to present a defense "depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that otherwise did not exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006).

It was undisputed that Petitioner killed Megan Collins. Petitioner testified that on the date in question he went to Collins' apartment, despite the fact that he knew that Collins had secured a Personal Protection Order against him. (ECF No. 24-11 at PageID.423). According to Petitioner, after arriving at Collins' apartment, he left to go to the store "to get some condoms." (ECF No. 24-11 at PageID.423-24). Upon returning from the store, Petitioner allegedly encountered two men leaving Collins' apartment. (ECF No. 24-11 at PageID.424). Petitioner testified that the two men returned inside Collins' apartment at which point Petitioner "kick[ed] the door in" and began fighting with one of the men. (ECF No. 24-11 at PageID.424). According to Petitioner, one of the men struck him twice with a 2x4 after which the two men exited Collins' residence. (ECF No. 24-11 at PageID.424-25). Petitioner testified that he then "just went crazy" and attacked Collins in an effort to "defend" himself. (ECF No. 24-11 at PageID.425).

The doctor who performed the autopsy on Megan Collins testified that Collins suffered: (1) blunt force trauma to the head; (2) blunt force injuries to other portions of her body;

9

(3) 24 stab wounds to her torso; and (4) 14 stab wounds to her upper extremities. (ECF No. 24-7 at PageID.314-22). Petitioner asserted that he did not intend to kill Collins, but nevertheless acknowledged that after beating her and stabbing her more than 30 times he did not contact the police or call 911, but instead simply drove off in Collins' truck. (ECF No. 24-11 at PageID.427-28). Petitioner conceded that when he was interviewed by the police he failed to make any mention of the two men he allegedly encountered exiting Collins' residence on the night in question.[1] (ECF No. 24-11 at PageID.429-30). Petitioner also acknowledged that he had previously stated to Collins, during an argument, that "she wouldn't exist anymore" and, moreover, that he would "stab [her] 33 times." (ECF No. 24-11 at PageID.431).

Petitioner has presented no evidence indicating what Linda Collins would have stated had she been permitted to testify regarding her daughter's depression and her conduct and/or demeanor when she did not take her anti-depression medication. Thus, any argument by Petitioner that Collins' testimony would have been relevant or beneficial to his defense or any other matter legitimately at issue in this case is nothing more than abject speculation. Furthermore, Petitioner testified that he knew Megan Collins for several years before killing her and spent much of that time living with her. (ECF No. 24-11 at PageID.422-23). Petitioner could, therefore, have testified, based on first-hand knowledge, about Collins' depression and how Collins was acting on the night in question.

The Michigan Court of Appeals denied Petitioner's claim regarding this issue as follows:

---

[1] Petitioner's interview with the police was recorded and played for the jury. (ECF No. 24-9 at PageID.410-11). The officer did not testify about the content of their conversation, however, and the record does not contain a transcript of the interview.

> The evidence defendant attempted to introduce about the victim's depression was purely speculative and irrelevant. As the trial court noted, there were no witnesses to the murder, and the victim's mother was not present during her daughter's murder. There is no evidence to even suggest that the victim's mother could offer insight about what happened when her daughter was being killed, how her daughter behaved, or what was her daughter's state of mind. At most, the victim's mother could offer generalized testimony about the victim's behavior when she was not taking medication. It was not an abuse of discretion to find that such attenuated evidence was irrelevant, as it did not make a material fact of the case any more or less probable.
>
> Defendant's argument that he was denied his constitutional right to present a defense is likewise meritless. "A criminal defendant has a right to present a defense under our state and federal constitutions." As "the United States Supreme Court stated, [o]ur cases establish, at a minimum, that criminal defendants have the right to ... put before a jury evidence that might influence the determination of guilt." However, the right to present a defense is not absolute. It "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process[,]" such as Michigan's "legitimate interest in promulgating and implementing its own rules concerning the conduct of trials." Moreover, "Michigan's Rules of Evidence do not infringe a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve."
>
> Defendant has failed to articulate how the application of the Michigan Rules of Evidence in this case was "arbitrary or disproportionate to the purposes they are designed to serve." As noted above, any speculative evidence defendant may have gleaned from the victim's mother was simply irrelevant and, thus, the application of the rules of evidence did not infringe on defendant's right to actually present a defense. Furthermore, defendant had ample opportunity to present a defense based on voluntary manslaughter when he testified. Since defendant was "allowed to present evidence in the form of his testimony" that would constitute a defense to the first-degree murder charges, "we reject defendant['s] claim that constitutional error occurred[.]"

*Jones*, 2012 WL 6913823 at *2-3.

In light of the authority and evidence identified above, the Court concludes that this

determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Jones' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

Date: November 8, 2016       /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge